UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAISHA IMANI HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 5590 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JPMORGAN CHASE & CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Maisha Imani Hamilton brought this *pro se* suit under the diversity jurisdiction against JPMorgan Chase & Co., alleging that she hit her head on the ledge of a teller window at a Chase branch. Docs. 11, 23. Chase moved to dismiss, for judgment on the pleadings, and to strike certain portions of the complaint. Doc. 29. In response, Hamilton moved for and received leave to file an amended complaint. Docs. 31, 35-38. Chase then moved to dismiss the amended complaint. Doc. 39. In response, Hamilton moved for and received leave to file a second amended complaint. Docs. 42-43, 46, 48-51. In granting Hamilton leave the second time, the court cautioned that "[a]ny further motions for leave to amend will be subject to close scrutiny under Civil Rule 15(a)(2)." Doc. 43.

The 439-paragraph second amended complaint asserts claims for strict product liability, negligence, gross negligence, and willful and wanton conduct. Doc. 51. Chase moves under Rule 12(b)(6) to dismiss the strict liability, gross negligence, and willful and wanton conduct claims, and moves under Rule 12(f) to strike portions of the complaint. Doc. 52. Hamilton sought and was granted an extension to file her response brief. Docs. 57, 59. On the date her brief was due, Hamilton filed what she calls an "answer" that, rather than respond to Chase's legal arguments, purports to "re-plead her claims in order to state said claims in such a manner

1

that relief can be granted." Doc. 65 at 1. Twelve days later, Hamilton moved for leave to file a version of this "answer" as her third amended complaint. Doc. 68. Chase opposed Hamilton's motion, citing undue delay, prejudice, and futility. Doc. 69 at 3. Hamilton responded to Chase's opposition by filing another motion for leave to file the "answer" as her third amended complaint. Doc. 74. In the following weeks, Hamilton twice more moved for leave to file a third amended complaint, asserting that her delay was justified by her *pro se* status and health problems, Doc. 76, and because Chase hacked her computer and email, which interfered with her drafting the third amended complaint, Doc. 77.

A. **Hamilton's Motion for Leave to Amend**

Hamilton's motions for leave to amend are denied. Rule 15(a)(2) provides that "court[s] should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendant[], or where the amendment would be futile." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 693 (7th Cir. 2017) (internal quotation marks omitted). A plaintiff ordinarily should be given at least one opportunity to amend, *see Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.,* 895 F.3d 933, 941 (7th Cir. 2018), but is not entitled to additional opportunities if she failed to remedy defects apparent at the time of the prior amendment or chose not to include information or claims known to her at that time, *see Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) (affirming the district court's denial of leave to amend to add an ADA claim where the plaintiff "could have alleged the ADA claim at the beginning of the suit" and "[t]he lengthy delay could not be justified by newly discovered information").

Even bearing in mind her asserted health problems, Doc. 68 at 1; Doc. 76 at 1, Hamilton's delay in seeking leave to file a third amended complaint was undue. She has already sought and received two opportunities to amend her complaint. Her prior amendments were substantial, and she offers no reason why she could not have made in one of her two prior amended complaints the changes she now seeks to make. Hamilton's alleged computer problems do not compel a different outcome, as those difficulties at most extended the *time* it took to draft the third amended complaint and do not justify the *need* for a third amendment in the first place.

Moreover, allowing Hamilton to amend yet again would cause prejudice. Chase has already litigated multiple rounds of Rule 12(b)(6) and 12(f) motions, and granting Hamilton leave to amend yet again would prejudice Chase by "forcing [it] to articulate [even more] reasons for dismissal, and, at the same time providing [Hamilton] with the opportunity to correct mistakes facially apparent since the first complaint after the defendant[] had shown [its] hand." *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 759 (7th Cir. 2002). Permitting Hamilton to amend again also would prejudice the court. *See Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (stating that long delays before seeking to amend a complaint can "burden … the judicial system" and "defeat the public's interest in speedy resolution of legal disputes," and thus could justify denial of leave to amend). That said, the court will construe Hamilton's "answer," Doc. 65, and her proposed third amended complaint, Doc. 76-1; *see* Doc. 77 at 5, as responses to Chase's motion to dismiss.

### B.     Chase's Motion to Dismiss

In resolving Chase's Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred

3

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Hamilton's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Hamilton as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

The Chase branch at 10 South Dearborn Street in Chicago has teller windows with custom-made marble or granite ledges. Doc. 51 at ¶ 1. The ledges extend approximately six inches from the windows, at the height of Hamilton's torso. *Ibid*. Hamilton was at a teller window at that Chase branch on August 17, 2017. *Id*. at ¶¶ 1, 31. She bent down to put belongings into her backpack, which she had set on the floor, and when standing back up she hit her head on the underside of the ledge. *Id*. at ¶¶ 31-32, 153-154. Hamilton experienced serious pain at the part of her head where she previously had surgery. *Id*. at ¶¶ 154-155. Paramedics examined Hamilton, but she declined to be taken to the hospital, as she had a civil case pending in court that day. *Id*. at ¶¶ 163-165. She was unable to stand or walk independently for several hours. *Id*. at ¶¶ 156-159, 168-170. Since her injury, Hamilton has experienced scalp pain, headaches, and vision problems, for which she has sought medical treatment. *Id*. at ¶¶ 212-220, 304.

The parties agree that Illinois law applies. Doc. 52 at 3; Doc. 65 at 1. Hamilton's strict liability claims are grounded in design defect and failure to warn. Doc. 65 at 1-2; Doc. 76-1 at 1-2. Hamilton alleges that because the teller window stations are custom-made according to Chase's specifications, Chase is strictly liable for their defects because it "had a duty to

4

manufacture/custom-build a product that was not in an unreasonably dangerous condition" and to "warn users of the teller windows of the dangers of its product." Doc. 65 at 3, 13, 15; *see* Doc. 76-1 at 1, 4, 24, 28. Chase responds that because Hamilton alleges that it was merely a "user of the teller ledge," it cannot be held liable in strict liability. Doc. 52 at 4. Chase's response elides the crux of Hamilton's claim, which is that Chase is not a mere user because it created the ledge's allegedly defective design. Doc. 65 at 2-3, 13; Doc. 76-1 at 4, 24. Hamilton's strict liability claims may therefore proceed.

Chase also moves to dismiss the gross negligence and willful and wanton claims on the ground that they are not standalone causes of action. Doc. 52 at 5-6. "Illinois does not recognize gross negligence as an independent ground for recovery." *Merit Ins. Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979) (citing *Chi., R. I. & P. Ry. Co. v. Hamler*, 74 N.E. 705 (Ill. 1905)). The court therefore construes the gross negligence claim as an ordinary negligence claim. *See FDIC v. Crowe Horwath LLP*, 2018 WL 1508485, at *6 n.9 (N.D. Ill. Mar. 27, 2018); *Torrence v. U.S. Bankr. Ct., N.D. Ill.*, 2017 WL 3593116, at *6 (N.D. Ill. Aug. 21, 2017). Similarly, "[n]o separate and distinct tort exists for willful and wanton conduct. Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Doe v. Coe*, 135 N.E.3d 1, 20 (Ill. 2019) (citation omitted). Accordingly, the court construes the willful and wanton claim as an aggravated negligence claim. *See Christie v. Forecki*, 404 F. Supp. 3d 1206, 1213 (N.D. Ill. 2019). Allowing Hamilton to proceed in this manner is important because she seeks punitive damages, which can be awarded if Chase acted in a grossly negligent or willful and wanton manner. *See Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1082 (7th Cir. 2019) ("Under Illinois law, punitive damages may be awarded only if 'the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is committed with fraud, actual malice,

5

deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'") (internal quotation marks omitted) (quoting *Slovinski v. Elliot*, 927 N.E.2d 1221, 1225 (Ill. 2010)).

### C. Chase's Motion to Strike

Chase moves to strike various portions of the operative complaint. Doc. 52 at 6-9. Under Rule 12(f), a district court has the discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

Arguing that "the gist of th[e] Complaint is that [Chase] bears responsibility for the teller ledges used at the bank where [Hamilton] injured her head," Chase moves to strike Paragraphs 50-135, which allege that Chase participated in a Medicare fraud scheme, Paragraphs 252-328, which allege that Chase "somehow created a false report about [Hamilton's] alleged [head injury] with the Chicago Fire Department," and Paragraphs 329-354, which allege that she suffered a medical battery and other wrongs while being treated for her injuries. Doc. 52 at 8. Hamilton's "answer," Doc. 65, and proposed third amended complaint, Doc. 76-1, omit Paragraphs 50-135 and 329-354 of the operative complaint, thus implicitly acknowledging that they should be stricken. Paragraphs 252-328 will not be stricken because Chase's alleged false report regarding Hamilton's injury might conceivably bear on its liability.

Chase next moves the court to combine Hamilton's four negligence-based counts "into one single Count based on Negligence." Doc. 52 at 4-5. In so moving, Chase acknowledges that combining those counts "will not limit the nature or extent of [Hamilton's] requested relief, or

6

the parties against whom [s]he may recover." *Id*. at 4. At this stage, the way the operative complaint separates negligence counts is immaterial. The court therefore denies Chase's request without prejudice to renewal at summary judgment or before trial.

Finally, Chase moves to strike Hamilton's prayer for punitive damages on the ground that punitive damages cannot be awarded for ordinary negligence. Doc. 52 at 6-7. Because Hamilton alleges that Chase's tortious conduct rises to the level of gross negligence or willful and wanton conduct, Doc. 65 at 5; Doc. 76-1 at 6—which, as noted, can support a punitive damage award, *see Saccameno*, 943 F.3d at 1082—the prayer for punitive damages will not be stricken.

## Conclusion

Hamilton's motions for leave to amend are denied. Chase's motion to dismiss is denied. Chase's motion to strike is granted as to Paragraphs 50-135 and 329-354 of the operative complaint, and otherwise is denied.

August 10, 2020

_____
United States District Judge